Good morning, Your Honors. May I please the court? My name is Marcel Bodillano, an admitted UCL law student on behalf of Celia Diaz Martinez. I will be addressing the premature petition for review issue, while my colleague Octavia Velarde will be addressing the merits argument. We will be saving five minutes for the bottle. As to the jurisdictional issue, the government's motion to dismiss should be denied, and the court should align itself with the view of the Second, Third, and Eleventh Circuits. This court should hold that a petition for review here, while premature in light of the pending BIA's decision, ripened to a timely petition upon the BIA rendering its decision for three main reasons. First, the government has not claimed that it was prejudiced by the petitioners filing the petition for review prior to the BIA's rendering its decision. Second, this court has not taken any action on the merits before the BIA entered its final judgment. Third, and most importantly, allowing premature petition for review to ripen in immigration context will be consistent with how courts treat premature petition for review in the civil context. Accordingly, this court should hold that immigration petition for review here subject to the same practical standard regarding ripening as in civil cases under Rule 482 in a first-year case. What are we to make of the Fifth Circuit case, which relies upon an unpublished decision from the Ninth Circuit? Sorry, Your Honor, are you talking about the Breon case? Yes. Yes, so Breon is... Which the Fifth Circuit, as I recall, relies on. Yes, Your Honor. The Breon case is distinguishable from our case here. In Breon, the case was involving a remand from the BIA to the IJ, and then the petitioner was filing a petition for review while the BIA's remand was still pending with the IJ. There, the petitioner had a chance to appeal from the IJ and the BIA and the Ninth Circuit all over again if the IJ ruled against the petitioner. While here, we don't have the same option. If the court finds no jurisdiction in this case, our petitioner is out of luck, and we don't have any more recourse for appeal. Therefore, the Breon case is factually distinguishable from us, and also the Fifth Circuit case is the opposite because the case involved habeas petition, and it was converted to immigration appeal. Whereas here, we don't have a habeas petition. We just have a simple immigration case. And this court in the Salon v. Holder case says in 2014, we take no position on the current circuit split regarding treatment of premature petitions generally. And then in the footnote, it cites on the one hand the cases from the Second Circuit, the Third Circuit, I believe the Eleventh Circuit, and then on the other hand, the Fifth Circuit case, which had cited Breon, and I believe the Sixth Circuit case. So this is an issue that you're saying needs to be resolved. Yes, Your Honor. The Ninth Circuit has not taken a position on the circuit split issue yet, and we ask the court to align itself with the Second, Third, and Eleventh Circuits. Specifically, the Second and Third Circuits are the most analogous to our case here because it involves a similar procedure where the petitioner in those cases also filed a premature petition for review and B.I. subsequently rendered his final judgment, and then the circuit court in those cases found that they had jurisdiction. I have a question about the notice. It's dated June 23, 2010. And it says it provides notice scheduled for a hearing before the immigration court on October 27, 2010 at 8 a.m. My understanding of your brief is that you're saying that counsel was not notified as to the time that the hearing would be held, but it seems to be clearly indicated on this form. No, Your Honor. First of all, actually, my colleague will be addressing the merits argument. I'm sorry. But no, don't worry. I can answer your question. Actually, I'm sorry. Okay. No worries. I'll ask your sister. Okay. Okay. Okay. Why don't we – Let me pose one question, maybe between the two of you, which is how much difference does a jurisdictional argument make? What issues can't be reached via the second appeal? Your Honor, the second appeal, as we know, is it was late, or we're arguing that it was not late because of equitable tolling. But, however, the first issue contains arguments that we tried to make, saying that she did not receive notice. And I think the jurisdictional issue also matters because she was punished for being too diligent by filing notice to appeal too early, and she was not late. That's why we urge the court to find jurisdiction on the first appeal. I look, for example, at the 2018 decision by the BIA, and it seems to cover pretty much the same territory that was covered before. Are there issues that you have concluded can be reached only through – only if we would determine that the premature filing – the prematurely filed petition in response to what ultimately became the BIA's 2017 decision, are there issues that can't be reached via the later petition? Your Honor, if possible, I would like to get back to you on the rebuttal. And it's really more merit space, so maybe your colleague can speak to that. But I understand the jurisdictional issue is there, and I've struggled with it and so forth, and at some point I ask myself, well, what difference does it really make? So I'll be asking the government the same thing. Okay. Thank you. Danny, I will reserve. Yes. That's fine. Thank you so much. Thank you. We'll hear from your co-counsel. Good morning, Your Honor. It's my pleas of court. I'd like to start off by answering the question as to the June hearing order. It is our position that the June hearing order is unclear. It does not clearly and unambiguously state that it is 8 a.m. It is actually handwritten. It is incursive. There's a circle to it. I have to say, looking at it, this is just one person looking at it, it looks like 8 a.m., but I understand that's your position. Right. Well, we're also told that it was actually entered at the hearing in June, at which point your client was present together with her then-counsel, and it was discussed orally. So even if there's something wrong with the belt, aren't the suspenders of oral notice and notice given to counsel sufficient? We would argue that, no, Your Honor. Written notice must be in writing, and under federal statute. It is in writing. The alleged ambiguity seems to be hard to maintain if, in fact, the ambiguity, even if you would read that form in a way that says 8 a.m. is not clear, if you're given it at a hearing where the date and time is announced and your counsel is there and it all takes place at the same time, it's not a very persuasive position, it seems to me, to say that, well, she didn't get proper notice of the time. So we're asking the court to look at this in context. So we're looking at this in context. The petitioner actually attended all of her meetings. She filed a motion to change venue. She consistently communicated to the immigration court when she changed her address, and her hearing was rescheduled several times. It was only this time where she showed up late, and in looking at the other hearing notices, those are all typed up, and the ones that are handwritten do not have any sort of smudge marks or circles. And so it makes sense that someone who's been a diligent petitioner throughout the process would have showed up at the right date but at the wrong time. Let me ask you about another event that took place, I think it's on that June 23rd day. Yes, Your Honor. I think. No, maybe not. Hold on. Yes. Okay, so there's one aspect of the record I want you to help me understand. So initially there was a notice to appear with four allegations, correct? There was an original. Back in 2007. Correct, there was an original. Original, right. For some reason on June 23rd, 2010, the government files a document called Additional Charges of Inadmissibility Deportability. Correct, that's the mandate up to you. And alleges a new charge or a new allegation, and then checks the box. It's in lieu of those set forth in the original charging document. Correct. Okay, is there anything in the record that shows that she was ever served with this document? No, Your Honor. And under De Broda, an NTA must be reasonably calculated to reach the intended recipient. And under Velasquez-Escobar, this court found that an NTA mailed to an old address was defective because the petitioner did, in fact, communicate the new address to the immigration court. Okay, so let me ask one other thing. So the ALJ eventually issues a removal order, correct? Correct. And the removal order states that at a prior hearing, the respondent admitted the factual allegations in the notice to appear and conceded removability. What is that referring to? My understanding is she did not admit removability. In fact, she filed a motion to reopen afterwards, and this is based on an in absentia ruling. So I don't understand. Was there ever an issue with regard? Did she ever have lawful status? I can understand you can make an application for relief, but my sense was that she never had lawful status, so there wouldn't have been anything to contest with regard to removability. Well, she was prima facie eligible under MASCARA and possibly other forms of relief. We actually don't know why the government decided to change the original NTA and change the date. She came to this country as a minor. So based on the record, she's prima facie eligible for different sorts of relief. We don't know what the government was seeking to do in amending the NTA. But she did apply for status. I didn't have a chance. Unfortunately, I didn't really digest all of these documents until recently. But is there a requirement that somebody who's in proceedings has to be informed and notified of the charges and admit to them or deny them and all that kind of stuff, sort of like an arraignment in criminal court? I don't know if it's similar to criminal court, but under Bridges v. Wickson, the Supreme Court did find that meticulous care of due process must be exercised in removal proceedings, and removal proceedings are similar to criminal situations because under Perdia, this court found that deportation hearings implicate the most substantial of the... Okay, I'm just trying to understand these records. I don't quite know what to make of them yet. Okay. I think Judge Kassman has a question for you. What was the conduct underlying Ms. Martinez's conviction for willful injury of a child? We don't know. It just says that there was some sort of situation with a child. She had a couple of children. One of them, I believe, had some sort of medical issues. Her children are U.S. citizens. It was just something done to a child. Child abuse, I believe, or neglect. I'll just save the rest for rebuttal. I'll give you some time for rebuttal. Okay, thank you. Good morning, Your Honors. May it please the Court. Cherise Pratt for the Respondent, William P. Barr. Your Honors, this Court should dismiss the first petition and follow the reasoning of the Fifth and Sixth Circuits. In Marrera, as this Court pointed out, they relied on this Court's reasoning in Bryan, finding that it's a nullity to consider a premature petition because there is no final order. If we do that, what issues are taken off the table? I don't believe any issues are taken off the table because she filed a second timely. Which makes me wonder, why are we struggling with this? I mean, does this matter? I thought the second petition was untimely. The second petition, well, both petitions. I mean, the second motion to reopen, I'm sorry, is untimely. Yes, it is untimely. But the first motion to reopen isn't untimely. Well, it depends untimely in what sense. As I understood it, the second petition wasn't untimely in the sense of it responded after the BIA's 2018 decision, but the BIA felt it was untimely because it was well more than 90 days. 180 days, yes. 180 days, and that's true for both of them. So both of them are untimely in terms of too long since 2011, whenever it was. But in terms of coming to this court, the problem with the first one is it was prematurely filed. The argument isn't that it was too late. It was too early. And I don't know of any similar problem with the second one. So in terms of this court's jurisdiction, it seems to me if there's no issue about this court's jurisdiction over the second petition, and if the second petition winds up encompassing all the same issues that were raised in the first, then does it really matter whether we have jurisdiction over the first because we get jurisdiction over the same issues in the second? Correct. It would just be if you wanted to address the circuit split. Well, when you put it like that, who would want to address this? If you put it that way. And so we believe that the reasoning that was provided in Morera, in Bryan, Jaber. What's the prejudice to government, though? In other instances, we've recognized premature. There's been a premature notice of appeal filed. Right. What's the prejudice here? Why is it so critical here? Well, it's not necessarily prejudice because if you look at it, if a petition is filed one day late, it's dismissed. Well, here it's early. But the statute doesn't say a petition can be filed early. It says 30 days after. And if you look at Stone, Stone says that you have to look at the statutory provision specifying the timing of review. They're mandatory and jurisdictional, not subject to equitable tolling. Strict fidelity to the statutory terms. Like I said, one day late, they're out. So why should you allow people to file way early? And it also goes against being very specific about the issue that you're seeking on appeal. But the reality here is, as I understand it, that the BIA issued its final order actually before, maybe a day before the government filed its motion to dismiss. Yes. So the order was, had ripened, as it were. It had ripened. And this court had, you know, taken no action on the case. Well, the thing is, she did not, unlike all the other cases, she is not appealing from an order. She's appealing from the denial of a stay. In Shiboyan, you say there's no jurisdiction over the denial of a stay. So would you be reversing Shiboyan and your cases, and now allowing people to file petitions off of stays and holding them? That doesn't make sense. So, and then another thing I want to- But the stay was essentially extinguished. The stay was extinguished? Extinguished because she didn't proceed with further documentation. And the order became effective, the order of removal. No, this court, she benefited by filing this premature petition because this court gave her a temporary stay that she wasn't even entitled to. She got a temporary stay. And then she didn't even attach the final order to the petition for review, which would have let you dismiss it right away. She was pro se, correct? Well- Did she have assistance by, did counsel do all of this? She did. When she filed the premature notice of appeal, petition with us or whatever it was she filed, did she do that on her own or was it counsel-assisted? So she had counsel from July 13, 2017, through June 20, 2018. She had counsel in her proceedings before the board. When she filed the first motion to reopen, the denial of the motion to reopen, when that issue, when she filed her second motion to reopen, and the denial issue, she had counsel. So she could have just asked her counsel. She had an attorney all along in these proceedings. Maybe she didn't. Maybe the lawyer said, you know, how about $1,500 or $2,000 to file, whatever. But she could have asked a simple question whether she could appeal from the stay. She had counsel. So, you know- So it's your position? I don't want you to feel like you're in stone, but is it your view that all the issues that they seek to address before us can be resolved without any significant impediments in the second motion to reopen? Yes. Yes. But you wouldn't be, you know, opining on the premature ripening issue. Okay. Did you want to address the notice? Oh, the- Could you ask? Maybe you can just answer my question. Yes. I'm trying to understand the record. Are you familiar with the record? Yes. Okay. Are you familiar with the document that's called Notice to Appear? Yes. And which page are you referring to, please? Page 219 of the Excerpts of Records. Okay. Okay. Yes. Okay, so that's the notice. That's the original Notice to Appear, right? I believe so. And there's four allegations? Yes. One, two, three, four? Yes. Dated 2-9-0-7? Yes. And we know everything that happens? We cited the one at page 221. Right. And we know that she admits to those charges, right? Yes. I forget where it is, but at some point she does admit those charges. One of the proceedings where she appears, she does admit those. Is that right? Yes, that would be set forth in my facts. No, just wait for me one second. Okay. So then we know what happens on the 23rd when she shows up for court and is given a new date for October. But there's something else that happens on that date on the 23rd of June, as far as I can tell, which I want you to help me understand the significance of it, which is there's additional charges of inadmissibility deportability are filed. Okay. So it appears that, yes, an amended NTA was entered. She appeared at a master calendar hearing, and it was continued to October 27th. She was represented by counsel. Okay. Okay. So is there anything to reflect that she was ever admitted or denied? It says here, in lieu of those set forth in the original charging document. What does that mean? Let me see here. Maybe nothing. Yes, so I don't have the answer to that question. Okay. You don't know either? No. All I know is that she appeared for every hearing represented by counsel. And so, you know, if that was like. . . So we do know that this form, on the backside of this form, it says certificate of service. It's not filled in. So on page 222, let's see. Are you talking about page 222? No, I'm talking about the backside of this additional charges of inadmissibility deportability. What page in the record? 217. Okay. And then there's page 218, which is the backside. But it seems like that was done. That would have been done at the master calendar hearing. Well, that's what I can't figure. But it has certificate of service. It just says in person. In person is not checked. Well, they appeared at a master calendar hearing, and she was represented by counsel. Do we have that in the record? Yes. Where do I find that? June 23rd. Page 180 to 181. Hold on. June 23rd, 2010. Okay. Which administrative record are you looking at? 18-72034. And you're on page what page? 180 to 181. Okay. Just a sec. Are you talking about her declaration? No. It's the order that you were referring to earlier. Excuse me. I'm sorry. I have to go a few more pages. I'm sorry. It's the 8 a.m. order. Yes. So that is dated June 23rd, 2010. Second page of that shows a certificate of service with personal service on her attorney. The box checked is for alien's attorney or representative. The box for alien is not checked. But they were both there. But she has said that she was there. Yes. And service on counsel is good for the alien. Okay. So then at the end, though, when she doesn't appear the next hearing, and shortly thereafter a removal order is issued. Yes. And it's referring to, it refers to, based on her admission at a prior hearing, the respondent admitted the factual allegation. So it appears that would have been the June 23rd, 2010 hearing, master calendar hearing. And in that? Where she was given the, you know, the order to appear on October 27th. Yeah. So that would have been the last time she had a hearing, and then she failed to show up for the next one. Okay. And at that June 23rd hearing, she admitted to the new allegation? Apparently, because that's where they had the master. Well, I want to know, can we tell for sure? We can only tell by what's in the record. Okay. And we know that it was a master calendar hearing. Could she have denied it? I guess we would have some record if something was denied. There would be something in the record. Okay. And remember, she was represented by counsel. Yes, I understand. Well, he may have. But they were contemplating another hearing, correct? That would have been the merits hearing that she failed to show. Why would they have a merits hearing if she was? What relief was she seeking? I believe she was seeking. Or maybe the NACARA. Or NACARA. I cannot recall right now. Okay. All right. You know what the conviction, the underlying conduct was for the willful injury of a child? We only have what's in the record. And I don't think it had any underlying, anything other than what I referenced in the page in the record. I don't think we had anything else other than that. But she never ---- She served 15 days in jail for it. She never presented arguments relating to hardship with respect to her family. This is a woman who has lived in the United States for years and years, has four children. One has schizophrenia. Awesome. And they are American citizens. And she would be sent back to El Salvador, and the children would remain here. Well, I mean, it's her choice whether she wants her children to remain here or go back with her. It's her choice. That would be her choice. So did you have any further questions with respect to either of the two positions? No. No. Thank you. Okay. Well, thank you very much, Your Honor. Thank you. Let's see. You have some rebuttal time. Thank you, Your Honor. First of all, there's no evidence that she was personally ---- there was personal service by an amended NTA. There was no record on that. And as Your Honor ---- What's the significance of that? Well, it's about due process, Your Honor. And furthermore, it's also that it was the base of her immovability of the amended NTA. And if she was never personally serviced by the amended NTA and also conceded to the immovability, then the government should not prevail. The only change is to eliminate the alleged date of entry, and the other allegations don't change. I'm not sure how that impacts upon her immovability because date of entry is irrelevant to that question. It may be relevant to a cancellation of removal or an ACARA claim, but not to her immovability, is it? It doesn't matter, Your Honor. So how is this a violation of due process with regard to the immovability issue? We have a statute and case from the Supreme Court that notice have to be served. There's no question that she'd received notice and at a prior date had conceded that she had no lawful status, that she had entered without inspection. The date of entry is irrelevant to the question of whether she had entered without inspection, and that's the basis for the immovability. But, Your Honor, she never conceded to the immovability. No, but instead, the records suggest she had conceded to that a long time before, and I don't see a challenge to that any place, certainly not in the motion to reopen. The challenge there all has to do with whether she received proper notice of the October hearing, not as to whether she'd ever received notice and conceded the grounds for immovability. Your Honor, I think, again, that it might have entered as relevant to the cancellation of removal and an ACARA relief. Well, what was going to take place at that October hearing? Counsel referred to it as a merits hearing. A hearing on what? I don't understand. We don't have anything on the record about that, but we're also assuming that it was a merits hearing in terms of whether she is eligible for relief. But, again, we don't know. We don't know what relief. We don't know either the ACARA or cancellation. On the face, she would seem to have plausible claims, at least, with regard to the date of her entry and coming from where she came from. So we see lots of these cases, and we see hearings where those become the source of the contest. Nothing happened. And so the judge winds up entering an absentia removal order. Yes, unfortunately, we don't have enough record here. We can only say that she was not personally served with the amended NTA that was based. There would be granted her relief for an ACARA or cancellation of removal. With that being said, my time is up. Thank you. Thank you, Counsel. We appreciate your arguments. The matter is submitted.
judges: Paez, Clifton, Katzmann